Next case called for argument is in rape of Detention of Davis. Council. Thank you, Ron. May it please the court. Today I represent Earl Sidney Davis and he has been adjudicated a sexually violent person under the Sexually Violent Persons Act and subsequent to that he's been given the disposition of involuntary commitment until such time as he has let us say better. The. Commitment occurred in 2002. In a 2007 order, the Circuit Court of Madison County denied Mr. Davis' pro se motion for a new trial. Also denied about 10 other motions. Mr. Davis at that time. I say about because study is I have. I can't actually tell you how many motions were disposed of in that order. Mr. Davis appealed. The denial of his motion for a new trial to this court and the circuit court appointed me to represent him. I think that's the first time I've heard Mr. Davis since 2007. The sole claim in this court in 2007 appeal was that the circuit court erred in failing to inquire concerning the factual date. The basis of Mr. Davis' claim that his trial counsel was ineffective. Not that the claim on appeal wasn't that his counsel was ineffective. It was that circuit court failed to sufficiently inquire into his pro se contentions. It was. We asked for in our brief in that case for remand for an inquiry on the pro se allegations of ineffective assistance pursuant to the Supreme Court's case in opinion and more. The state answered our brief in that case by saying that the judgment appeal was not final and appealable because the circuit court did not rule on Mr. Davis' motions alleging ineffective assistance. Well, I told Mr. Davis he agreed we might as well concede the motion to dismiss and not that we could probably oppose it anyway because the state was conceding that the circuit court hadn't ruled on the ineffectiveness motions and that's what Mr. Davis was saying. And Mr. Davis was saying he wanted the circuit court to enforce the ruling and here's the state saying, well, they're not ruled on it. It's got to go back. So perfect. So this court dismissed the mandate this court issued on October 8th, 2008, and I was out of the case. Now, these cases, the prisoners of pro se and the fact that an appeals pending doesn't really change what they're doing. Things are constantly being filed. Motions are being doctored for hearing. Hearings are occurring in the circuit court. And so while the 2007 appeals pending here, Mr. Davis filed another pro se motion in circuit court again, alleging ineffective assistance of counsel regarding the stipulated bench trial. More about that in a minute, but not just a bench trial, stipulated bench trial. The circuit court filed the appellate mandate on October 10th, two days after this court issued it. And 26 days later, on November 5th of last year, the circuit court appointed attorney Jeff Weishaupt to represent Mr. Davis on Mr. Davis' pro se motion alleging ineffective assistance that he filed while the case was up here, 2007 appeals. And after appointing Mr. Weishaupt, circuit court set the matter for hearing 15 days later. That's right in the order of appointing Mr. Weishaupt. At that hearing 15 days later, the state argued that Mr. Davis' motion alleging ineffective assistance was untimely. I mean, here we are. We're back because the motion wasn't decided. Now he's made a virtually identical motion. The state argued it was untimely. Well, circuit court agreed. Dismissed Mr. Davis' motion. There's no indication. And of course, I've been through the record. It's paperwork, but there's no indication the circuit court or the assistant attorney general or attorney Weishaupt realized there was a mandate in the file from this court. Just 40 days earlier. So Mr. Davis appealed again. And circuit court appointed me again. Here we are. Now, right off the bat, the state concedes the circuit court was wrong. Shouldn't have found that the motion was untimely. It certainly wasn't. They just defeated 17-0. The state concedes that. Now the state's arguing that Mr. Davis has had his hearing. Circuit court has considered his motion now. Well, and if that be true, where's the trial court's ruling? Other than this motion's untimely. Where's the trial court's ruling? You won't find it. Didn't find the allegations rolling out there. He didn't find the counsel was affected. Didn't find it was ineffective. Didn't find the allegations were insufficient. Only found the motion was late. That's all the trial court found. And on this subject, that's all that's occurred since this was up here last. That's all we've got. The state argues, and I expect we'll argue in a moment, that Mr. Davis hasn't shown the trial counsel was ineffective. Well, you bet he hasn't. He's just gotten up there pro se and, and, and said what his, what his claims were. It was, Mr. Davis, what do you have to say about that? Well, I've got, do you want me to read my 23 claims? Well, no, summarized. And then you went through a couple of them until you got cut off. Judge never made any sort of ruling on ineffective assistance. Didn't ask Mr. Davis. Any questions? When it comes to this court without a rule, without a rule, without an inquiry, Supreme Court. Don't know. In the more case, people versus me, said that women, post-trial motion. It's got to be an inquiry. They were used to use that word repeatedly to be an inquiry. Problem here. Isn't whether trial counsel was ineffective or not. Problem is that so far, all Mr. Davis has done is speak for himself and there hasn't been an inquiry. And some of this is not on the record. For instance, Mr. Davis is saying he was tripped. It is a stipulated bench trial. He understood who was agreeing to the bench trial. He didn't understand he was stipulated to the facts. And he said that his trial work tripped him into that. You're not going to find that in there. You're not going to find those facts in there. And the court didn't inquire into it. Didn't inquire into it in any way. Not even our ruling on it. Not a ruling on any of it. What Moore says is there's got to be an inquiry in that situation. Now, I said that we're not here to prove that counsel is ineffective. And I hope that you will note that in Moore, the Supreme Court's case, the state argued, well, wait a minute. These are still lame contentions. These are still lame contentions of ineffective assistance. And the Supreme Court said that misses the mark. It's not a question of whether counsel was ineffective. It's a question of whether the court sufficiently inquired. And the Supreme Court said, in Moore, the trial court didn't inquire at all. That's what we want to do. The court didn't inquire at all. Now, yesterday, the Office of the Illinois Courts released an opinion by the First District. And I have today presented a motion for leave to cite that case. We will grant the motion. And we'll grant you 10 days to reply, if you wish to reply to the case. So we don't want it argued today. It's been presented. If there's any response, you can respond to that. But you just filed it today. That's right. It wasn't released until yesterday. Right. It was cited November 20th. Okay. But I'm not sure if I understand. I'm going beyond what's allowed, I'm sure. If you want to make a comment on it, but they're going to have a right to respond. Absolutely. After oral argument and writing, if they wish. I'm going to say this is an awfully close case for us. It's awfully close to Moore. It's awfully close to this case. Vargas is a terrific case for us. And it was remanded on this very issue. I couldn't believe it until finally pot of gold in that 40-vote argument. And in both cases, the state is arguing, well, but your claims of ineffective assistance are lame. And I'm saying that if you'll check those cases, Vargas and Moore, if those are ineffective assistance cases on merits, Strickland is cited in every single case. Do I have to give the full cite on Strickland? I think not. Strickland is always cited. And you'll find that it's not cited in Moore by our Supreme Court. It's not cited in Vargas by the First District. Because that's not the question. The question is the inquiry. Was the circuit judge's inquiry sufficient? And where there's no inquiry, it's insufficient. I believe that I covered the points that I came here to make. And unless there are questions, I'm going to take my seat. I think that's it. Thank you, Counsel. Appreciate it. Counsel? Good morning, Your Honors. Eric Seaborn from the Illinois Attorney General's Office on behalf of the state. Good morning, Counsel. May it please the Court. The trial court here fulfilled its obligations under Morris, considering the pro se allegations of ineffective assistance. Moore requires that the trial court examine the factual basis of the claim, including possibly discussing the allegations with the defendant, and then determine whether a new counsel should be appointed. The respondent here, Mr. Davis, discussed his allegations with the trial court on three occasions before the trial court appointed Mr. Weishaupt. The first instance was the one that counsel cited to you. It was in the record at 208 to 211 in which Mr. Davis starts to talk about his 23 reasons in his initial motion that discussed Mr. Griffin's ineffectiveness. This came up again later at record 244 to 55. It's essentially 11 pages of Mr. Davis testifying about all of his interactions with Mr. Griffin and exactly what he thinks Mr. Griffin should have done. In the supplemental record that we supplemented in this court back during the briefing, again, during one of those final hearings, Mr. Davis again placed on the record what his discussions with Mr. Griffin had been and what he thought Mr. Griffin should have done differently. What Moore is really about is about developing the factual record behind the pro se allegations of ineffective assistance. In both the Moore case and in the Vargas case, which I also came across yesterday, so I'd be happy to discuss that this time. Okay. What happened there was that in both Moore and in Vargas and in people who use skates, which is another appellate court case, and there are a number of other appellate court cases about this, is the problem develops when the trial court essentially ignores the motion. It does not give the defendant an opportunity to expand on what his claims were and then does not appoint counsel for him to represent the defendant on these future claims. In Vargas, the first district held that the trial court's actions showed that the trial court was essentially completely unfamiliar with the Krankel rule. Not only did he not appoint counsel, he made no rulings on the claims whatsoever. In the Moore case, I believe the trial court was under the impression that because the defendant could raise ineffective assistance on appeal, there was no need to even deal with the post-trial motion. Here the trial court was obviously aware of the Krankel rule, even went so far as to appoint Mr. Weishaupt to look into these allegations and to represent Mr. Davis because he had been pro se. In any event, Moore itself does say that the failure to appoint counsel could conceivably be harmless. If the trial court had made enough of a development of the factual record, there's sufficient inquiry with the defendant, if he had made some sort of inquiry, then the failure to appoint future counsel could be harmless. And in fact, Moore, when they talk about the remand that they're going to have for this factual inquiry, the Moore court specifically says that they're not going to remand for a full evidentiary hearing. All the remanding for is this limited inquiry for a policy between trial court and the defendant so that the defendant can have this opportunity to talk about what he thinks his counsel should have done differently. Mr. Davis had that opportunity here at several points over the course of the post-trial motions. Did the trial court rule on the Krankel issue? There was no ruling on the merits here because the state's response to this final pro se motion was to say that it was untimely and forfeited. And so the trial court didn't reach the merits of it. Well, wouldn't Moore require that not only the court inquire, but also make some determination about whether something further should happen and say it on the record? Your Honor, Moore doesn't specifically say that a ruling is necessary. Moore essentially assumes that it is because, of course, Moore and the vast majority of his public court cases are criminal ones. It's like anything else. If an issue is up, you expect the judge to make a ruling on it. Ordinarily, Your Honor, yes, and certainly in the criminal context. Of course, we're an SVP, so we're under the Code of Civil Procedure, in which it is possible that certain motions could be untimely and could be forfeited. Now, here, you know, we have conceded that the trial court should not have dismissed it based on timeliness. Obviously, the trial court had lost track of things in the years of post-trial motions. However, the fact that the trial court made an improper ruling on timeliness doesn't mean that he didn't fulfill his obligations under Moore to allow the motion. Okay, so what did the trial court do that we're reviewing? Well, Your Honor, the trial court did deny the motions based on timeliness, but because this court can't affirm the trial court's denial on any basis that's apparent from the record, and because Mr. Davis had so many opportunities to develop the factual record behind this, this court made a strickland ruling based on an inability to make his showing particularly under the prejudice prong. So if the trial court would have made a ruling, your argument is it would have been to deny the motion. Right. Then the court could deny it based on those merits. I should note that in addition to the number of times that Mr. Davis was able to speak to the trial court about this, Mr. Davis also filed a number of prosaic motions. They're handwritten throughout the record, and I believe at one point the trial court characterized Mr. Davis's motions as being fairly pointed. Mr. Davis is a literate man who certainly doesn't seem to have any problem expressing himself. His contentions about Mr. Griffin are quite apparent from the record. In terms of the merits of those claims, however, the Respondent technically waived the merits of these claims by not raising them in his opening brief under Supreme Court Rule 341. But let's discuss the merits since we're here a little bit, particularly the notion of a stipulated bench trial, since that's the one the counsel seems to be emphasizing. Under strickland, of course, we presume the competence of Mr. Griffin. It's not the State's burden to show that all of Mr. Griffin's decisions were correct. It's Respondent's burden to show a reasonable probability that if Mr. Griffin had acted in the manner that he wanted, he would not have ended up being committed as an SPP. Now, in terms of the stipulated bench trial, this is a particularly weak claim and the Court can, in fact, deny it just based on the record that we have. First of all, in terms of whether or not there was going to be a bench trial versus a jury trial, the decision, of course, would ultimately have remained with Mr. Davis. It would only have been Mr. Griffin's recommendation to do so. And the trial court engaged in a lengthy colloquy with Mr. Davis before he waived the jury trial in which he made sure that Mr. Davis understood what it was that he was waiving, that he wasn't under the influence of any medication that would have affected his decision, that he had had time to think about it, had time to discuss it with Mr. Griffin. And it breaks particularly hollow because Mr. Davis was not a man who was inexperienced with the notion of a jury trial. He had had a bench trial for his original underlying Illinois conviction for sexual assault and he had later told one of the State's experts that he regretted that decision that he had made 15 years ago. It's absolutely incredible to believe that a man could waive a jury trial once, regret that decision, and then decide to do it again and not realize what it was that he was doing in the first place. In terms of whether or not it should have been stipulated, again, Mr. Davis signed a written stipulation which is in the record. And again, he's literate. He stated on the record that he could read and write English. He knew what it was that he was stipulating to. Now, in terms of whether or not the decision to recommend a stipulated bench trial was reasonable, it's an SVP proceeding. The decision to have a judge who is experienced with criminal law, has seen sexually violent persons before, make the decision as to whether or not somebody is sexually violent, rather than placing that information before a jury, much more likely to be ruled by emotion, have much less experience with persons who have been convicted of raping their nine-year-old daughters. That is not an unreasonable decision, and counsel has cited absolutely no case law indicating that that would be an unreasonable recommendation to make to your client, who of course is experienced with the decision whether or not to waive a jury. In terms of the stipulations, that's a matter of, I think, determining where it was that the, what the best trial strategy is, and where it's best to devote one's resources. Based on the information that Mr. Davis' counsel, who was Mr. Griffin, presented at the dispositional commitment hearing, his best evidence seemed to be the evidence of his own expert, Mr. Davis, who was the one who testified that he didn't think it was necessary for Mr. Davis to be committed, because based on his age and based on his testosterone level, that he could be placed on conditional discharge and receive treatment that way. That particular evidence, when contrasted with the state's evidence that they were able to just present by stipulation, is not reasonably probable to have changed the outcome of the stipulated bench trial. In terms of prejudice, I would just emphasize that based on the strength of the state's evidence, Mr. Davis has not shown through the record that he developed, and he could not show a reasonable probability that he would have been able to overcome this. There was an Arizona conviction for touching the genitals of a four-year-old girl. There was the Illinois conviction for vaginal penetration and fondling of his nine-year-old daughter. There would have been testimony from the daughter herself and a corroborating witness. And, of course, we had two states' experts on a pedophilia diagnosis along with alcohol dependence and antisocial personality disorder. Based on the record that Mr. Davis was able to present to the trial court, many opportunities to hear Mr. Davis talk about his interactions with Mr. Griffin, based on the strength of the evidence against him, Mr. Davis has not shown and could not show that if Mr. Griffin had acted differently, he would not have ended up committed as a sexually violent person. Unless the Court has any other questions, we would urge the Court to deny relief. Thank you, Your Honor. Thank you, Counsel. Counsel? Once again, Your Honor, I'm not going to get drawn into the Strickland discussion. It's distressing, really, to me that the state will stand and involve his trying to lead the Court into error by discussing the merits of the ineffectiveness of contentions. My client may be literate to some extent. He's also mentally ill. That's why he is what he is. And he alleged that he was tricked. And that's outside the record. More inquiry is required. Even appointed counsel. Did you hear that? The Court even appointed counsel. Take a look at Moore. Take a look at Moore. What does Moore say? Appointed counsel is optional. The inquiry is mandatory. Justice Stewart, you're pointing your question. Again, you've heard it from both sides now. Not even a ruling. Not even a ruling. Nothing. Just the timeliness. That's all we got. Counsel, yeah, he was appointed for 15 days to argue that the motion wasn't untimely. And then finally, he was gone two weeks after he was hired. Appointing counsel is optional. Moore says the inquiry is mandatory. We know we didn't get it here. Didn't even get a ruling. The other sentence I wrote down was obligation, satisfied its obligation, the Court did, to allow defendant to develop a factual record. Moore doesn't say anything about allowing him to develop a factual record. It says inquiry. It says inquiry. We don't have one. It's not enough to let a pro se and a legal defendant stand up there and talk. There's got to be, the judge has got to inquire into it, and obviously he's got to rule on it. I mean, if no case says he's got to rule on it, it's because the state's never tried to push a court this far out on that limb. Kind of a guinness book request. Now, about going through, about his opportunity to develop the record. There's only about six lines here. What are the reasons you want to dismiss Mr. Griffin? He's ineffective. Anything else? Mr. Davis, do you want me to read all 23 reasons? The Court, no. I want you to summarize. And so he talked until the Court cut him off. That's R-208-209, referring to the transcript. It's also in my brief ordered at page 15. So we don't have, the only thing Moore wants, the only thing Moore requires, and Vargas says it too, it's the end world. It's the end world. It's not a plenty counsel. That you can dispense with in an appropriate case. It's not sufficient either. Letting the defendant just stand up there and talk, and then doing nothing with it. Not even saying deny. Not even saying, I find this is a bunch of crap. Not even that. Just get out of here, you're late. That's all we've got. That's all we've got. I know these are not popular with us. Not popular clients either. But the state has led the Circuit Court into error here. Circuit Court obviously didn't understand that he needed to make this inquiry. The state pointed out, I don't remember if it was Moore or Vargas, that obviously the judge didn't even understand the crank of the rule. What hint do we have? That Circuit Court understood the crank of the rule or even knew it existed in this case. And the state should know it. My client, great, appreciates being granted a period. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take the case under.